PITTMAN, Judge.
P.D. (“the mother”) appeals from a judgment of the Montgomery Juvenile Court awarding custody of her children (collectively, “the children”), born of the marriage to her former husband (“the father”), to S.S., the father’s sister (“the aunt”).
In March 2009, about a month after the death of the father, the aunt petitioned to have the children declared dependent and sought custody of the children. Additionally, the aunt filed an ex parte motion seeking temporary custody of the children (“the ex parte motion”). The juvenile *130 court granted the ex parte motion pending a hearing on the dependency and custody petitions, which was thereafter held in October 2009.
In a judgment, dated October 23, 2009, the juvenile court found that the children were dependent, awarded custody of the children to the aunt, and granted visitation rights to the mother, the terms of which were to be decided and agreed upon by the parties. That order also provided that the mother’s visits were to be supervised by the aunt or by another person approved by the aunt. In response, the mother timely filed a postjudgment motion to alter, amend, or vacate that judgment on November 6, 2009, to which the aunt and the children’s guardian ad litem responded in opposition. The mother then filed, pursuant to Rule 59.1, Ala. R. Civ. P., a notice of the parties’ express agreement to extend until December 1, 2009, the time for a ruling on the postjudgment motion.[1] The juvenile court heard arguments on the mother’s postjudgment motion on December 1, 2009, but it did not expressly rule on that motion by the end of that day. On December 8, 2009, the juvenile court purported to amend its previous judgment to provide that the mother should have supervised visitation with the children, at a minimum, from Saturday at 12 p.m. until Sunday at 5 p.m. during the third weekend of each month and that the mother’s visitation could be increased or changed upon agreement of the parties. The mother thereafter timely appealed, and the juvenile court judge certified the record as adequate for appellate review. See Rule 28(A), Ala. R. Juv. P.
The mother raises three issues on appeal. First, the mother contends that the juvenile court erred in awarding custody of the children to the aunt. Second, the mother asks this court to address whether her postjudgment motion was denied by operation of law so as to render void the juvenile court’s order purporting to amend the judgment. Third, the mother argues that the juvenile court erred in requiring that her visitation be supervised by, and in requiring visitation to occur at the discretion of, the aunt.
We begin by addressing the mother’s first argument that the juvenile court erred in awarding custody of the children to the aunt. In support of that argument, the mother asserts that the juvenile court erred for three reasons: 1) the mother’s parental rights were, she says, incorrectly “terminated” without the juvenile court’s having first found her to be an unfit parent; 2) the award of custody to a nonpar-ent was improper because the juvenile court had not first found the mother to be an unfit parent; and 3) assuming that the award of custody to the aunt was based on a determination that the children were dependent, that determination would necessarily be incorrect because, the mother says, the aunt did not prove dependency.
The mother initially asserts that the juvenile court terminated her parental rights without first finding that she was an unfit parent. However, that assertion is based on the mother’s apparent misunderstanding of the juvenile court’s decision.[2] The *131 juvenile court did not terminate the mother’s parental rights; instead, it concluded that the children were dependent. The trial transcript reveals that the juvenile court judge, during the hearing on the mother’s postjudgment motion, expressly indicated that the mother’s parental rights had not been terminated, stating that the judge disagreed with the notion that, “if children are placed with third parties, there [must] necessarily be a finding of unfitness against the natural parent” because, in the juvenile court’s view, such a finding of unfitness “removes from a natural parent any viable possibility to make changes in ... circumstances to be reunited with the child.” In fact, the mother, in her brief to this court, cites that statement in support of her contention that the juvenile court did not find the mother to be unfit. However, the mother’s reference to that statement demonstrates her apparent misapprehension of the juvenile court’s determination that the children were dependent, a determination that entails a much less severe outcome for the mother than would a termination of her parental rights.[3] Thus, the mother’s argument that the juvenile court failed to satisfy a prerequisite of finding unfitness before terminating her parental rights (which did not occur) is factually unsound.
The mother next contends that, because the juvenile court did not find the mother unfit, custody should not have been awarded to the aunt, a nonparent, based on Ex parte Terry, 494 So.2d 628, 632 (Ala.1986), which case governs custody disputes between parents and nonparents.[4] In Terry, the court stated:
“‘The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of such misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question. Hanlon v. Mooney, 407 So.2d 559 (Ala.1981).’ ”
494 So.2d at 632 (quoting Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983)). Terry applies in child-custody disputes between a parent and nonparent; it does not apply if the child or children, the custody of whom is disputed, have been found to be depen *132 dent, as is the case here. See W.T.H. v. M.M.M., 915 So.2d 64, 70 (Ala.Civ.App.2005) (discussing the abundance of caselaw regarding the distinction between child-custody disputes and the dispositional phase of a dependency proceeding). Therefore, because the juvenile court found the children to be dependent, no finding of unfitness was necessary. See Anonymous v. Anonymous, 504 So.2d 289, 291 (Ala.Civ.App.1986) (stating that a determination that a parent is unfit is unnecessary to award custody to a nonparent after a finding that a child is dependent).
The third ground upon which the mother contends that the juvenile court erred in awarding custody to the aunt is that the juvenile court could not have properly determined that the children were dependent because, the mother says, the aunt did not prove dependency. Under Ala.Code 1975, § 12-15-311(a), a juvenile court’s determination that a child is dependent is to be based on clear and convincing evidence. The mother argues that the juvenile court’s decision was not so supported.
In reviewing a dependency determination made by the juvenile court based upon evidence presented ore tenus, we will not disturb that determination without a showing that it was plainly and palpably wrong. See J.L. v. W.E., 64 So.3d 631, 634-35 (Ala.Civ.App.2010) (quoting L.A.C. v. T.S.C., 8 So.3d 322, 326-27 (Ala.Civ.App.2008)); see also J.B. v. Cleburne County Dep’t of Human Res., 992 So.2d 34, 39-40 (Ala.Civ.App.2008) (quoting Ex parte R.T.S., 771 So.2d 475, 477 (Ala.2000)) (distinguishing between the fact-finding role of the trial court and the standard of appellate review). Applying that standard of review, we address the question whether the juvenile court could have concluded that the children’s dependency had been established by clear and convincing evidence.
“[Cjlear and convincing evidence is
“1 “ ‘[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.’ ” ’ ”
J.L., 64 So.3d at 634-35 (quoting L.A.C., 8 So.3d at 326-27, quoting in turn Ala.Code 1975, § 6-11-20(b)(4)).
Under Ala.Code 1975, § 12-15-102(8)a., a “dependent child” is
“[a] child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
“1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12 — 15—301[,] or neglectf,] as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
“2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
“3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
*133 “4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the ■ compulsory school attendance laws of this state.
“5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
“6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.
“7. Who has been placed for care or adoption in violation of the law.
“8. Who, for any other cause, is in need of the care and protection of the state.”
“In determining whether a child is dependent, the juvenile court ‘may consider any competent evidence relevant to the ability or -willingness of the parent to discharge his or her responsibilities to the child....’” J.L., 64 So.3d at 636 (quoting M.E. v. Shelby County Dep’t of Human Res., 972 So.2d 89, 100 (Ala.Civ.App.2007)). To assess whether the juvenile court properly concluded that the children were dependent, we must review the record to determine whether clear and convincing evidence to support a finding of dependency, as defined above, was presented to that court.
The record reveals that the mother and the father had three children: a daughter (“the daughter”), born in July 1995; a son (“the older son”), born in January 1997; and a another son (“the younger son”) born in September 1998.[5] The mother and the father had separated in or around 2005, at which time the family was living in Montgomery. The record shows that the mother and the children lived in Florida from December 2005 until August 2006, at which time they moved back to Montgomery. In February 2009, the father died.
This action arose when the aunt petitioned for a finding of dependency as to, and custody of, the children in March 2009. In the aunt’s petitions and her ex parte motion, she claimed that the children had lived in Florida with her and the father “until he [had died]”; that the children had attended school in Florida until the mother had moved them back to Alabama “without notifying anyone” on the day before the father had died; that, after returning to Alabama, the mother and the children had moved into a hotel room with the mother’s alleged boyfriend who, the aunt claimed, was “a known drug dealer”; that the mother was “unstable” and had allegedly been using drugs because, the aunt claimed, the mother had recently lost weight and had appeared “very hostile and combative”; that the mother’s disabled son, the half brother of the children (“the half brother”), had also been living in the hotel room; that the mother’s only source of income was the half brother’s Social Security benefits; that the mother was wanted for arrest in Montgomery County, in Elmore County, and in Florida; that the Montgomery County Sheriffs office had planned to arrest the mother the following day; that the mother might attempt to flee the area to avoid the warrants for her arrests or “become combative and possibly harm the children to avoid apprehension”; that the mother had a “known gambling problem” and had frequented the local gambling establishments; that the daughter, who, the aunt claimed, was believed to be pregnant, had not been receiving appropriate prenatal care; that the aunt be *134 lieved that the children were possibly in danger as a result of living with the mother; and that, because the mother had left Florida without notifying anyone, the mother could potentially leave the area and lose contact with the family. The aunt’s ex parte motion was granted by the juvenile court pending a hearing on the matter.
At the ore tenus proceeding, held in October 2009, undisputed evidence indicated that the younger son had missed over 10 days of school, and that the daughter had missed more than 20 days of school, while living with the mother. Further, by the mother’s own testimony, it was revealed that the mother had experienced financial difficulties that had required her to move several times since 2005; the mother testified that, on two occasions, she and the children had lived in hotels. Additionally, the guardian ad litem testified that, although she believed the mother had treated acute medical problems that the children had suffered, she also believed the children had not received proper medical care while living with the mother. She explained that, after having been placed under the custody of the aunt, two of the children had been prescribed glasses. The record further shows that the children never had medical insurance while they lived with their mother. In light of those facts, the juvenile court had ample grounds upon which to adjudicate the children dependent. See Ala.Code 1975, § 12-15-102(8)a.(3) and (4) (providing that a child may be adjudicated dependent when a parent “neglects or refuses” to provide adequate medical care for the child or when a parent “fails, refuses, or neglects” to send the child to school regularly, as compelled to do so under Alabama law).
After a child is determined to be dependent by clear and convincing evidence, a juvenile court may award custody based on what that court determines to be “for the welfare and best interests of the child.” Ala.Code 1975, § 12-15-314(a)(4). The mother has not challenged the juvenile court’s decision that it is in the best interest of the children to be in the custody of the aunt; thus, we refrain from reviewing the custodial disposition.
The mother also challenges the juvenile court’s judgment as to visitation, including whether the juvenile court’s postjudgment order of December 8, 2009, purporting to alter the visitation arrangement is void. The mother argues that the postjudgment order is void because, she contends, it was issued after the expiration of the period within which a juvenile court may rule on a postjudgment motion.
In order to assess the merits of the mother’s arguments, we must determine whether the juvenile court’s judgment dated October 23, 2009, or the juvenile court’s order dated December 8, 2009, is effective, and only then may we determine whether the visitation awarded to the mother was proper.
Rule 1(B), Ala. R. Juv. P., provides, in part, that “[a] postjudgment motion is deemed denied if not ruled on within 14 days of filing.” However, Rule 59.1, Ala. R. Civ. P., which is made applicable to juvenile proceedings under Rule 1, Ala. R. Juv. P., provides that, “with the express consent of all the parties, which consent shall appear of record,” that period may be extended.
The record reveals that, after the final judgment was issued on October 23, 2009, the mother filed a postjudgment motion on November 6, 2009, which was properly filed within 14 days of the entry of the juvenile court’s judgment. See Rule 1, Ala. R. Juv. P. Before the hearing on the mother’s postjudgment motion, the mother filed a notice that all parties had agreed to *135 extend the period within which the juvenile court could expressly rule on the mother’s motion to December 1, 2009. The hearing on the mother’s postjudgment motion was held on that date, during which the juvenile judge stated an intent to amend the judgment to grant the mother supervised visitation on the third weekend of each month in Florida, where the aunt lived, and also to state that visitation could be increased or changed upon the agreement of the parties. However, the juvenile court did not issue a postjudgment order until December 8, 2009, seven days after the December 1, 2009, deadline had expired.
The aunt argues that “it is well settled by case law and the [rjules that” the juvenile court judge’s statements during the hearing on the mother’s post-judgment motion “constitute[ ] an [ojrder from the trial court.”[6] In fact, the opposite is true; Alabama “cases interpreting and implementing Rule 59.1, Ala. R. Civ. P., have made it clear [that] a trial judge can ‘dispose of a pending post-judgment motion only by entering a ruling granting or denying the motion.” Ex parte Chamblee, 899 So.2d 244, 247 (Ala.2004) (first emphasis added). In light of the facts of record, we agree with the mother that the order issued on December 8, 2009, is void.
We next address whether the juvenile court’s award of visitation to the mother in the original judgment was proper. The mother contends that the juvenile court erred in not setting forth a visitation schedule for the mother and in granting only supervised visitation. We address each issue in turn.
In A.M.B. v. R.B.B., 4 So.3d 468 (Ala.Civ.App.2007), we outlined the applicable law governing a trial court’s determination of visitation between a noncustodial parent and his or her children:
“[T]he determination of proper visitation
“‘“is within the sound discretion of the trial court, and that court’s determination should not be reversed by an appellate court absent a showing of an abuse of discretion.” Ex parte Bland, 796 So.2d 340 at 343 [ (Ala.2000) ]. “The primary consideration in setting visitation rights is the best interest of the child. Each child visitation case must be decided on its own facts and circumstances.” DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998) (citation omitted).’
“Williams v. Williams, 905 So.2d 820, 830 (Ala.Civ.App.2004).
“Although this court recognizes that visitation is a matter left to the sound discretion of the trial court, such discretion is not unbounded. This court has previously held that it is reversible error for a juvenile court to leave the matter of a noncustodial parent’s visitation rights to the sole discretion of a custodial parent or other legal custodian of the child. See, e.g., L.L.M. v. S.F., 919 So.2d 307 (Ala.Civ.App.2005) (reversing a juvenile court’s visitation award that placed the father in control of the mother’s visitation with the child), and K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379 (Ala.Civ.App.2004) (reversing a juvenile court’s visitation award that essentially conditioned the mother’s right to visitation with her child upon the consent of the child’s aunt and uncle); see also D.B. v. Madison County Dep’t of Human Res., 937 So.2d 535, 541 (Ala.Civ.App.2006) (plurality opinion reversing a juvenile court’s judgment that made the mother’s visitation ‘ “subject to any conditions and limitations deemed to be necessary and appro *136 priate’” by the child’s great aunt, who was awarded custody of the child).”
4 So.3d at 471-72.
In A.M.B., the juvenile court had awarded the mother supervised visitation as agreed to by the mother and the custodian. We remanded that case to the juvenile court “with instructions to set forth a specific visitation schedule so as to provide for reasonable contact between the mother and the child.” 4 So.3d at 472. Like the judgment at issue in the judgment entered by the juvenile court in this case awarded visitation to the mother “as may be agreed upon by the [aunt] and the mother, provided that such visitation shall be supervised by [the aunt] or such person as may be approved by [the aunt].” Therefore, as we did in A.M.B., we hold that the juvenile court erred in not setting forth a specific visitation schedule, especially because the terms of the mother’s visitation, as set forth in the juvenile court’s judgment, leave open the possibility for the aunt to unilaterally terminate the mother’s visitation altogether. See Bryant v. Bryant, 739 So.2d 53, 56-57 (Ala.Civ.App.1999).
We also agree with the mother that the juvenile court erred in awarding her only supervised visitation with the children. The record reveals that the mother has never abused the children. Additionally, the record shows that, since the aunt was given custody of the children, the mother has voluntarily enrolled herself in parenting classes. Although the aunt, in her ex parte motion, had alleged that the mother was living with a known drug dealer, that allegation was not substantiated at trial. In light of the lack of evidence indicating that the mother had ever abused the children or had placed the children in harm’s way, supervised visitation was improper. Cf. Jackson v. Jackson, 999 So.2d 488, 494 (Ala.Civ.App.2007) (main opinion indicating that limiting a parent’s visitation to supervised visitation would be improper when the mother had been arrested only for writing worthless checks and there was no evidence indicating that the mother “had ever exposed the children to illegal drug use or associated activity or conversation”).
We therefore affirm the judgment as to the juvenile court’s determination that the children are dependent. However, we reverse the judgment as to visitation, and we remand this case to the juvenile court with instructions to set forth an unsupervised visitation schedule for the mother and the children.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. The mother’s notice of the parties' agreement to extend the juvenile court’s time to rule on her postjudgment motion contemplated that the hearing on that her motion would be held as scheduled on November 24, 2009. However, that hearing was apparently continued until December 1, 2009.

. The aunt, in her brief to this court, also incorrectly treats the juvenile court’s decision as a finding of unfitness and a termination of parental rights, instead of a determination of dependency, which it was. The judgment, as well as the juvenile judge’s statements made at the hearing on the mother's postjudgment *131 motion, indicates only that the children had been adjudged dependent.

.When a juvenile court finds that a child is dependent and the custodial parent of that child is divested of his or her right to custody, without a termination of that parent's parental rights or a finding of unfitness, that parent retains "residual parental rights” to that child, as defined under Ala.Code 1975, § 12-15-102(23), which "includ[e], but [are] not necessarily limited to, the right to visitation, the right to withhold consent to adoption, the right to determine religious affiliation, and the responsibility for support, unless determined by order of the juvenile court not to be in the best interest of the child.”

.The aunt argues that a natural parent’s prima facie right to custody of his or her child "can be overcome by clear and convincing evidence that removal from the parent’s custody is in the child’s best interests,” citing S.F. v. Department of Human Res., 680 So.2d 346, 347 (Ala.Civ.App.1996); Brown v. Alabama Dep’t of Pensions & Sec., 473 So.2d 533, 534 (Ala.Civ.App.1985); and G.L. v. State Dep’t of Human Res., 646 So.2d 81, 84 (Ala.Civ.App.1994). However, those cases that she cites to support her argument are inapplicable because they involve a trial court's determination to terminate parental rights, which has not occurred in this case.

. In March 2009, when this action was commenced, the daughter was 13 years old, the older son was 12 years old, and the younger son was 10 years old.

. The aunt does not cite a rule or caselaw to support her contention.