MOORE, Judge.
 

 R.B.O. (“the father”) appeals from a judgment of the Jefferson Juvenile Court declining to award him unsupervised visits with M.S. (“the child”). We reverse.
 

 On August 26, 2008, the Jefferson County Department of Human Resources (“DHR”) filed a dependency petition alleging that the child was dependent because A.A., the child’s mother (“the mother”), had an extensive history of drug abuse, had been hospitalized due to a drug overdose, and was residing with a male, who also had an extensive history of drug abuse. A pickup order for the child was entered that same day. A shelter-care hearing was held on August 27, 2008, after which an order was entered awarding DHR legal custody of the child. Subsequently, a dispositional hearing was held, and an order was entered on September 15, 2008, awarding custody of the child to J.S., the child’s maternal grandmother (“the maternal grandmother”), and awarding the mother supervised visitation. A further dispositional hearing was held on
 
 *1288
 
 February 2, 2009, and an order was entered on February 6, 2009, finding the child dependent and continuing custody of the child with the maternal grandmother.
 

 On February 6, 2009, the juvenile court entered an order requiring the father to submit to paternity testing. On June 18, 2009, the juvenile court entered an order establishing the father’s paternity of the child. On June 18, 2009, the juvenile court entered a dispositional order noting that the father had been adjudicated as the child’s legal father, noting that the child had been found dependent on February 6, 2009, continuing custody of the child with the maternal grandmother, awarding the mother and the father supervised visitation, ordering DHR to provide certain services to the parents, and ordering that all parties cooperate with DHR.
 

 A dispositional hearing was held on June 22, 2010, at which the juvenile court heard evidence regarding whether the father should be awarded unsupervised visitation. On July 13, 2010, the juvenile court entered a judgment stating:
 

 “The Court does acknowledge that the father has made many changes to better his position in this case. The Court cannot disregard the fact that the father remains on parole, has no valid driver’s license, has not paid child support and has a relationship with a woman that has lost custody of at least two of her children through this court.
 

 “The mother makes no request for a change at this time.
 

 “After sworn testimony and considering all exhibits that were properly introduced this court orders as follows:
 

 “1. That custody of [the child] remains vested with [the maternal grandmother],
 

 “2. Visitation for [the] mother and [the] father shall remain as previously ordered.
 

 “3. The case is closed, and court costs taxed as paid.”
 

 On July 26, 2010, the father filed his notice of appeal to this court. On appeal, the father argues that the juvenile court exceeded its discretion in declining his request that his visitation be unsupervised.
 

 In dependency cases, a juvenile court possesses discretion over visitation, pursuant to former § 12-15-71(a)(4), Ala. Code 1975.
 
 [1]
 
 That Code section provided that the juvenile court shall exercise its discretion according to the “welfare and best interests of the child.”
 
 [2]
 
 Notably,
 
 *1289
 
 that standard is identical to the standard used for determining the visitation rights of noncustodial parents in divorce cases.
 
 See Carr v. Broyles,
 
 652 So.2d 299, 303 (Ala.Civ.App.1994) (“[T]he primary consideration in establishing the visitation rights accorded a noncustodial parent is always the best interests and welfare of the child.”). In
 
 Carr,
 
 this court held that, under the best-interests standard, in order “to limit a parent’s visitation based on misconduct, the limitation ordered must be supported by evidence that the misconduct of the parent is detrimental to the child.” 652 So.2d at 304 (citing
 
 Jones v. Haraway,
 
 537 So.2d 946, 947 (Ala.Civ.App.1988));
 
 see also Ex parte Thompson,
 
 51 So.3d 265, 272 (Ala.2010) (“A trial court in establishing visitation privileges for a noncustodial parent must consider the best interests and welfare of the minor child and, where appropriate, as in this case, set conditions on visitation that protect the child.”). Seizing on that language, the father argues that the juvenile court exceeded its discretion in requiring his visitation with the child to be supervised without receiving evidence indicating that unsupervised visitation would be detrimental to the child.
 

 After carefully reviewing the record, we find no evidence indicating that unsupervised visitation with the father would be detrimental to the child. As the juvenile court found, the record does show that, at the time the July 2010 judgment was entered, the father was on parole. The father testified that he had 39 or 40 days left on parole pertaining to incidents of burglary and related charges of possessing and receiving stolen property, which occurred in 2004. The father testified that he was compliant with all the conditions of his parole, including weekly drug testing, which had produced consistently negative results. The record does not contain any evidence of current criminal charges pending against the father. The record also shows that the father had completed parenting classes as ordered by the juvenile court. The record does not indicate how the facts that the father was on parole or that the father had a criminal past would impair his ability to properly care for the child during unsupervised visitation.
 

 The father testified that he did not have a valid Alabama driver’s license but that he still drove when necessary. The father testified that he would not drive with the child in the vehicle if he were awarded unsupervised visits. The record indicates that the father requested unsupervised visits every other Saturday for eight hours during the daytime. The father lives in his father’s house with his father and his father’s girlfriend. The father testified that his father’s house is also the permanent residence for his sister and his nephew but that they only stay there an average of twice a month. Apparently, a responsible adult would be available to transport the child in the event of an emergency. At the least, the record does not indicate that the child would be subjected to an undue risk of harm because of the father’s lack of a valid driver’s license.
 

 The father testified that he had been ordered to pay $100 per month in child support but that he had not paid anything since the end of 2009. The fa
 
 *1290
 
 ther had obtained a job and had been working for a marble and granite installation business for two weeks at the time of the trial; before obtaining that job he had worked in landscaping. The record does not indicate the amount of income the father had received since he was ordered to pay child support. The record does, however, indicate that the reason the father had stopped paying child support was because he was having financial problems. In
 
 Carr,
 
 this court held that it is improper to restrict a parent’s visitation with his or her child because of the parent’s failure to meet his or her financial obligations relating to the child. 652 So.2d at 304;
 
 see also Ex parte M.D.C.,
 
 39 So.3d 1117, 1131 (Ala. 2009) (recognizing that the right to visitation is independent of the duty to pay child support). Thus, the failure of the father to pay child support does not indicate that visitation should be restricted in order to prevent harm to the child..
 

 The juvenile court correctly noted that the father was involved in “a relationship with a woman [who] has lost custody of at least two of her children through [the juvenile] court.” It was undisputed that the father was dating A.H. at the time of the trial and that she had stopped living with the father approximately a month before the trial, although the reason for her move was disputed. A.H. has five children. None of her children live with her, but two of them visit her regularly. A.H. lost custody of three of her children through dependency proceedings. The father testified that, if the juvenile court ordered him to keep the child away from A.H., he would comply with that order. A.H. likewise testified that she would abide by any order to stay away from the child.
 

 Any harm to the child from the father’s relationship with A.H. could have been ameliorated through less restrictive means than ordering supervised visitation. For example, the juvenile court could have ordered that the father exercise his visitation outside the presence of A.H.
 
 See Jackson v. Jackson,
 
 999 So.2d 488, 495 (Ala.Civ.App.2007) (Per Moore, J., with Pittman and Thomas, JJ., concurring in the result as to pertinent issue) (holding that any concern about influence of mother’s boyfriend should have been addressed by visitation provision restricting mother from exercising visitation around boyfriend instead of requiring visitation to be supervised). Hence, we hold that any harm to the child emanating from the relationship between the father and A.H. was not a sufficient ground for ordering all the father’s visitation with the child to be supervised.
 

 Other than the factors addressed above, the juvenile court did not cite any reason for denying the father’s request for unsupervised visitation.
 
 [3]
 
 In his brief to this court, the father points out that he currently enjoys unsupervised visitation with his teenage son from a former relationship. In
 
 Carr,
 
 this court, in reversing an award of supervised visitation with the child at issue, noted that the mother was living with another of her children “and [that] nothing in the record demonstrate^] any concern about the welfare of th[e] child in
 
 *1291
 
 her care.” 652 So.2d at 304. Likewise, in this case, the record does not contain any evidence indicating anything other than that the father enjoys a good relationship with his other child. The record certainly does not demonstrate that his other child has been endangered by unsupervised visitation with the father. As in
 
 Carr,
 
 that evidence undermines the decision to deny the father unsupervised visitation.
 

 A parent who has lost custody of a child through dependency proceedings retains the residual right to visitation with the child. Former § 12-15-1(24), Ala. Code 1975. It is in the best interest of a child to restrict the manner of his or her •visitation with his or her parent only when necessary to protect the health, safety, or welfare of the child.
 
 Ex parte Thompson, supra.
 
 A juvenile court exceeds its discretion, however, when it imposes an over-broad restriction on visitation that does more than is necessary to protect the child and thereby unduly infringes on the parent-child relationship.
 
 Pratt v. Pratt,
 
 56 So.3d 638, 641 (Ala.Civ.App.2010).
 

 In
 
 P.D. v. S.S.,
 
 67 So.3d 128, 130 (Ala.Civ.App.2011), the Montgomery Juvenile Court determined that the children at issue were dependent and awarded the children’s mother, P.D., supervised visitation. 67 So.3d at 130. P.D. appealed, arguing, among other things, that the Montgomery Juvenile Court had erred in requiring her visitation to be supervised. 67 So.3d at 130. This court reasoned:
 

 “We also agree with [P.D.] that the juvenile court erred in awarding her only supervised visitation with the children. The record reveals that [P.D.] has never abused the children. Additionally, the record shows that, since the [children’s] aunt was given custody of the children, [P.D.] has voluntarily enrolled herself in parenting classes. Although the aunt, in her ex parte motion, had alleged that [P.D.] was living with a known drug dealer, that allegation was not substantiated at trial. In light of the lack of evidence indicating that [P.D.] had ever abused the children or had placed the children in harm’s way, supervised visitation was improper.
 
 Cf Jackson v. Jackson,
 
 999 So.2d 488, 494 (Ala.Civ.App.2007) (main opinion indicating that limiting a parent’s visitation to supervised visitation would be improper when the mother had been arrested only for writing worthless checks and there was no evidence indicating that the mother ‘had ever exposed the children to illegal drug use or associated activity or conversation’).”
 

 P.D.,
 
 67 So.3d at 136.
 

 Similarly, in the present case, there was no evidence indicating that the father had abused or neglected the child or that he could not properly care for the child unsupervised.
 
 [4]
 
 Thus, for the foregoing reasons, we reverse the judgment of the juvenile court insofar as it denied the father unsupervised ■visitation every other Saturday during the daytime, and we remand the case for further proceedings consistent with this opinion. Specifically, we instruct the juvenile court on remand to consider
 
 *1292
 
 less-restrictive measures to protect the child other than supervised visitation, such as requiring visitation to occur outside the presence of A.H. and ordering the father not to drive with the child unless and until he obtains a valid driver’s license.
 

 The father also argues that the juvenile court erred in admitting certain evidence that he contends is irrelevant. Because we reverse the juvenile court’s judgment based on the father’s first argument, we pretermit discussion of the father’s eviden-tiary argument.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur in the result, without writings.
 

 [1]
 

 . Because the underlying dependency action was filed before the operative date of the current Alabama Juvenile Justice Act, § 12— 15-101 et seq., Ala.Code 1975 (effective January 1, 2009), it is governed by the former Alabama Juvenile Justice Act, former § 12— 15-1 etseq., Ala.Code 1975.
 

 [2]
 

 . DHR argues that the father’s petition should be interpreted as a request to modify a previous visitation judgment, which may be granted only upon proof of a material change of circumstances.
 
 N.T. v. P.G.,
 
 54 So.3d 918 (Ala.Civ.App.2010). We disagree. A petition to modify must be filed only after a final judgment has been entered that is intended to fix the visitation rights of a noncustodial parent based on then-existing conditions. The juvenile court did not enter a final visitation judgment: it merely ordered the visitation between the father and the child to be supervised while DHR provided reunification services to the family as part of an ongoing dependency case. Hence, the father did not have to file a modification petition and prove a material change of circumstances in order to have the juvenile court address his petition.
 
 See S.P. v. E.T.,
 
 957 So.2d 1127 (Ala.Civ.App.2005). We note, however, that, even if the father had been required to prove a material
 
 *1289
 
 change of circumstances, the record contains sufficient evidence of a change of circumstances, as is noted in the first sentence of the juvenile court’s judgment, to warrant a rede-termination of whether unsupervised visitation would serve the best interests of the child.
 

 [3]
 

 . In addition to the above factors, a witness for DHR testified that the father's visitation with the child should be supervised based on the facts that the father had at one time abused illegal drugs and that he had only relatively recently stopped attending a methadone clinic. The juvenile court, however, apparently rejected the father's past drug use as a ground for denying unsupervised visitation because it did not mention that circumstance in its judgment.
 

 [4]
 

 . Interestingly, the juvenile court found the child to be dependent in February 2009, several months before the father’s paternity of the child was established, based solely on the inability of the mother to care for the child. The juvenile court never expressly found the child to be dependent based on any shortcomings of the father. Because the father does not appeal on that ground, we do not specifically address that issue; however, we do note that, in this case, we are not dealing with a petition for unsupervised visitation filed by a parent who has been found to be unable to properly care for his or her child.