MOORE, Judge.
K.D. (“the mother”) appeals from a judgment of the Jefferson Juvenile Court (“the juvenile court”) finding K.W. (“the child”), who was born on June 4, 2004, to be dependent and placing the child in the custody of her father, C.W. (“the father”). We affirm.
Background[1]
The child was taken into protective custody on September 13, 2009, when the police responded to a shooting at the residence where the mother and her husband, J.D., lived.[2] The police report indicated, in pertinent part:
“Among the people in the house were [the child and her half sibling] and [the mother]. There were also several dogs *895 in the house. When officers entered the residence it was found to be in a severe state of filth. There was a very strong, foul odor throughout the house. Filth, clothing, and food items were also found throughout the house. The firearm used in the shooting was located under the sofa, in an unsecure manor [sic]. Officers have also received numerous ‘tips’ that narcotics were being used and sold out of the residence. Several residents of the incident location are well known by officers of the Fultondale Police Department and have been incarcerated on several occasions for various crimes, including drug charges.”
The Jefferson County Department of Human Resources (“DHR”) filed a dependency petition as to the child on September 14, 2009.
At a September 16, 2009, shelter-care hearing, the mother stipulated to the child’s dependency, and the juvenile court awarded temporary legal custody of the child to DHR and placed the child with the child’s paternal grandmother, M.W. The juvenile court’s order noted that the father was incarcerated at that time. The juvenile court ordered the mother and J.D. to submit to psychological evaluations, substance-abuse assessments, and random drug screens. They were also ordered to obtain and to maintain stable and suitable housing and employment. The mother was awarded supervised visitation with the child; the juvenile court, however, ordered that neither the father nor J.D. were to live with the child or to stay overnight in the same house with her.
In an order entered on March 11, 2010, the juvenile court indicated that the mother and J.D. had complied with the requirements to submit to psychological evaluations, substance-abuse assessments, and random drug screens and that the mother had successfully completed courses on parenting skills and domestic violence. The juvenile court also noted in its order that the father had appeared at a March 10, 2010, hearing and that he had been ordered to submit to a substance-abuse assessment and to maintain stable and suitable housing and employment. The juvenile court ordered that the father was allowed to exercise the visitation awarded to him in the parents’ divorce judgment, conditioned on the father’s maintaining negative drug screens.
On August 10, 2010, the mother moved the juvenile court to return custody of the child to her. The mother asserted that she and J.D. had complied with all the requirements that had been set for them by the juvenile court and by DHR. After a hearing on August 10, 2010, the juvenile court entered an order on August 17, 2010, awarding custody of the child to the father. The juvenile court left the matter open for future action and ordered DHR to supervise the parties’ compliance with its order.
On January 13, 2011, the juvenile court set aside its September 16, 2009, judgment as to the father, noting that the father had not been served with DHR’s dependency petition until January 7, 2011; however, it ordered that that judgment remain in force as to the mother. The juvenile court scheduled a hearing for February 16, 2011.
At the beginning of the February 16, 2011, hearing, the juvenile court inquired of the parties as to whether they stipulated to the dependency of the child. After an off-the-record discussion, the juvenile court stated as follows:
“All right. We’re back on the record. We do have a stipulation to dependency. We’re at disposition. Anything before we start taking testimony?”
Thereafter, no party objected to the juvenile court’s characterization of the stipulation, and the case proceeded to trial solely *896 on the issue of the proper disposition of the custody of the child.
Sara Shadix, DHR’s caseworker, testified at the hearing. At the conclusion of Shadix’s testimony, the mother moved the juvenile court to dismiss the dependency action, arguing that DHR had not established that the child remained dependent at the time of that hearing; the juvenile court denied the mother’s motion. The father then called as a witness Polly Kavli, a police officer who had been present at the mother’s residence on September 13, 2009, when the child was taken into protective custody. The father also testified at the hearing.
On March 30, 2011, the juvenile court entered its judgment finding the child to be dependent, awarding custody of the child to the father, and allowing the mother visitation to be supervised by the father or his designee. The juvenile court also ordered the dependency file to be closed. On April 13, 2011, the mother filed a motion to alter, amend, or vacate the judgment. The mother’s postjudgment motion was deemed denied by operation of law on April 27, 2011, see Rule 1(B), Ala. R. Juv. P., and the mother timely appealed on May 10, 2011.[3]

Analysis

The mother challenges the juvenile court’s finding, included in its March 30, 2011, judgment, that the parties had stipulated to the child’s dependency at the February 16, 2011, hearing. The mother denies that she stipulated to the child’s dependency at that hearing; she argues that, rather than stipulate to the child’s dependency, she had argued that the child was no longer dependent.
Ordinarily, a juvenile court cannot find a child dependent without receiving clear and convincing evidence establishing the dependency of the child. See Ala.Code 1975, § 12-15-310(b). However, nothing in the law prevents parties from stipulating to the dependency of a child. “A stipulation is a judicial admission, dispensing with proof, recognized and enforced by the courts as a substitute for legal proof.” Spradley v. State, 414 So.2d 170, 172 (Ala.Crim.App.1982). Therefore, when parties stipulate to the dependency of a child, a juvenile court may find a child dependent without clear and convincing evidence establishing the child’s dependency.
In this case, at the outset of the February 16, 2011, hearing, the juvenile court declared in open court that the parties had stipulated to the dependency of the child. The mother did not, at that time, dispute the juvenile court’s statement or otherwise object to its characterization of the stipulation. Hence, the record supports the juvenile court’s finding that the parties had, in fact, stipulated to the dependency of the child. See Rule 47, Ala. R.App. P. (declaring oral agreements reached in open court to be binding on the parties).
The mother did, at the close of Shadix’s testimony, argue that DHR had not proved that the child was presently dependent and that the case should be dismissed. See V.W. v. G.W., 990 So.2d 414 (Ala.Civ.App.2008) (holding that juvenile court may only dispose of custody of child in dependency proceeding if child is, in fact, dependent at time of disposition). However, because the mother had already stipulated to the dependency of the child, DHR did not have *897 the burden of proving the dependency of the child in the dispositional hearing, and the juvenile court acted within its authority in denying the mother’s motion to dismiss on that ground. On appeal, the mother argues that the child was not dependent, but “[o]ne who has stipulated to certain facts is foreclosed from repudiating them on appeal.” Spradley, 414 So.2d at 172.
Once a child is found dependent, a juvenile court may proceed immediately to a dispositional hearing to determine the appropriate custodial arrangement for the child. See Ala.Code 1975, § 12-15-311(a). It appears from the record that the juvenile court, after receiving the stipulation of dependency from the parties, proceeded directly to a dispositional hearing, as it was authorized to do. We find no error in the juvenile court’s finding that the parties stipulated to the dependency of the child or in its decision to conduct a dispositional hearing immediately upon receiving that stipulation.
The mother next challenges the juvenile court’s failure to allow her unsupervised visitation with the child. The juvenile court’s final judgment allowed the mother “supervised visitation with the minor child at least two (2) hours every week. Visitation shall be supervised by the father or his designee. The mother is not to bring anyone else to her visitation.” In her postjudgment motion, the mother asserted that she was entitled to the “least restrictive visitation,” which, she suggested, was a “standard visitation” schedule. That motion was denied by operation of law.
R.B.O. v. Jefferson County Department of Human Resources, 70 So.3d 1286 (Ala.Civ.App.2011), an opinion authored by Judge Moore in which four judges concurred in the result, states:
“In dependency cases, a juvenile court possesses discretion over visitation, pursuant to former § 12-15-71 (a)(4), Ala. Code 1975 [amended effective January 1, 2009, and recodified as Ala.Code 1975, § 12-15-215]. That Code section provided that the juvenile court shall exercise its discretion according to the ‘welfare and best interests of the child.’ Notably, that standard is identical to the standard used for determining the visitation rights of noncustodial parents in divorce cases. See Carr v. Broyles, 652 So.2d 299, 303 (Ala.Civ.App.1994) (‘[T]he primary consideration in establishing the visitation rights accorded a noncustodial parent is always the best interests and welfare of the child.’). In Carr, this court held that, under the best-interests standard, in order ‘to limit a parent’s visitation based on misconduct, the limitation ordered must be supported by evidence that the misconduct of the parent is detrimental to the child.’ 652 So.2d at 304 (citing Jones v. Haraway, 537 So.2d 946, 947 (Ala.Civ.App.1988)); see also Ex parte Thompson, 51 So.3d 265, 272 (Ala.2010) (‘A trial court in establishing visitation privileges for a noncustodial parent must consider the best interests and welfare of the minor child and, where appropriate, as in this case, set conditions on visitation that protect the child.’)....
[[Image here]]
“... It is in the best interest of a child to restrict the manner of his or her visitation with his or her parent only when necessary to protect the health, safety, or welfare of the child. Ex parte Thompson, supra. A juvenile court exceeds its discretion, however, when it imposes an overbroad restriction on visitation that does more than is necessary to protect the child and thereby unduly infringes on the parent-child relation *898 ship. Pratt v. Pratt, 56 So.3d 638, 641 (Ala.Civ.App.2010).”
70 So.3d at 1288-91 (footnotes omitted).
The risks identified at the February 16, 2011, hearing — indeed, throughout the pendency of this action — related primarily to the physical conditions found in the mother’s residence and to safety concerns stemming from other persons living in, staying at, or frequently visiting the mother’s residence. Although Shadix’s testimony established that some of the problems found at the mother’s residence had been rectified by February 16, 2011, the testimony provided by Polly Kavli, a Fulton-dale police officer, established that the safety issues remained a concern.
According to Kavli’s testimony, she had been dispatched to the mother’s residence on September 13, 2009, where she learned that J.D. and a young man had been involved in a shooting. Kavli described the condition of the residence that night as “atrocious.” Kavli testified that there were dirty clothes and dishes everywhere and “mattresses stacked up on the floor” because multiple people were living there.[4] According to Kavli, the child was taken into protective custody because of the unsuitable living conditions found at the residence and because the child had been in the midst of a violent shooting.
Kavli also testified that she had been dispatched to the mother’s residence on multiple occasions before September 13, 2009. Kavli testified that the Fultondale Police Department regularly received complaints or reports of criminal activity regarding the occupants of the mother’s residence; she described the activities at issue as “domestics,” “assaults,” “warrant service,” “drug complaints,” and “just numerous types of calls.” According to Kavli, between 2008 and 2010, the police had made 11 arrests at the residence and had responded to 33 “calls” regarding the occupants or the activities at the mother’s residence.[5] Kavli further testified that 29 of those police calls regarding the mother’s residence had been made between 2009 and 2010. Kavli testified, without objection, that the residence was known as a “drug house” to the Fultondale Police Department. The juvenile court also heard the father testify that he and his wife had observed an automobile parked at the mother’s residence on “December 28.” According to the father, the automobile belonged to a person whom the father knew to be a drug addict.
In P.D. v. S.S., 67 So.3d 128 (Ala.Civ.App.2011), this court reversed a judgment requiring all visitation between a noncustodial parent and her dependent children to be supervised because of the “lack of evidence indicating that the [noncustodial parent] had ever abused the children or had placed the children in harm’s way....” 67 So.3d at 136. Although in the present case the record does not reveal that the child had ever actually been physically harmed by the mother’s irresponsible behavior, the juvenile court reasonably could have determined from the evidence in the record that the mother had routinely placed the child in harm’s way by allowing criminal and dangerous activity to occur in the presence of the child. Under the circumstances, the juvenile court reasonably could have determined that, without supervision, any visitation between the *899 mother and the child would pose an undue risk of harm to the child. The juvenile court therefore acted within its discretion in ordering supervised visitation.
For the foregoing reasons, the juvenile court’s judgment is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
THOMAS, J., concurs in the result, without writing.

. At a dispositional hearing held on February 16, 2011, the juvenile court, without objection from the mother, took judicial notice of its entire court file pertaining to this child.

. The child's younger half sibling was also taken into protective custody. That child, who has a different father, is not at issue in this appeal.

. On May 4, 2011, the juvenile court purported to grant the mother’s postjudgment motion in part by modifying the visitation schedule set forth in its March 30, 2011, judgment. That postjudgment motion, however, had been deemed denied by operation of law on April 27, 2011, and, therefore, the juvenile court’s attempt to modify its earlier judgment was of no effect.

. Kavli identified additional persons that the Fultondale Police Department knew to be living in the mother’s residence at certain times.

. Kavli explained that a "call” was logged into the police system whenever an officer was dispatched to the residence. According to Kavli, the police department itself or a complaint from a third party could initiate a call.