THOMPSON, Presiding Judge.
J.L. (“the father”) appeals from a judgment finding his child, L.L. (“the child”), dependent and awarding custody of the child to W.E. and S.E. (“the maternal grandparents”).
The record indicates the following. The father and R.L. (“the mother”) divorced within a year of the birth of the child, who was born in May 2007. The mother was awarded custody of the child, and the father was granted standard visitation. In November 2008, the mother gave birth to another child (“the sibling”). The father of the sibling lives with the mother and the child whose custody is at issue in this case. In January 2009, when the sibling was two months old, he was taken to a hospital in Talladega with a broken arm and respiratory problems; he was subsequently transferred to Children’s Hospital in Birmingham. Medical staff stated that the injury to the sibling’s arm could have been accidental, but the Talladega County Department of Human Resources (“DHR”) was notified of the injury. DHR was notified a month later that the sibling was hospitalized at Children’s Hospital with what medical records described as a possibly life-threatening seizure, an intracranial hemorrhage, and 15 bone fractures “highly suggestive of nonaccidental trauma.” While the sibling remained hospitalized, the child, who showed no signs of injury, was removed from the mother’s home and placed in foster care.
On February 11, 2009, DHR filed a petition in the Talladega Juvenile Court seeking custody of the child.[1] On February 13, 2009, after a shelter-care hearing, the juvenile court entered an order in which it determined that there was probable cause for finding the child dependent and awarded temporary custody of the child to DHR. At that time, the juvenile court ordered an evaluation of W.E., the maternal grandfather, for possible placement of the child.
On March 19, 2009, one week after learning that the child had been removed from the mother’s custody, the father filed an action for custody of the child and sought an immediate hearing on the issue. In his pleading, the father stated that he had had no notice of the prior dependency proceedings. The juvenile court then ordered an evaluation of the father’s home.
On April 7, 2009, the juvenile court held an evidentiary hearing, after which it placed the child in the home of the mater *633 nal grandparents.[2] On June 24, 2009, the maternal grandparents filed a petition seeking custody of the child. The father filed a counterpetition. On August 21, 2009, the juvenile court held an evidentiary hearing on the parties’ petitions for custody. Evidence adduced at the trial tended to show the following.
Emily Milam, a DHR social worker involved in the child’s ease, testified that the father had been cooperative and compliant with DHR. He arrived for his visits with the child on time, and, Milam said, the father and the child had a good relationship. The maternal grandfather testified that the father appeared to be a good parent to the child. Milam testified that the father had declined parenting classes offered by DHR because the times and locations the classes were offered did not fit with his work schedule and because the father did not have a driver’s license. Mi-lam said she "viewed the father’s reasons for declining to enroll in the classes as good ones. Likewise, Milam said that she had discussed counseling with the father “in passing,” but she had not “pursue[d] it much.”
The father admitted to having been arrested twice for domestic violence. While he was married to the mother, he was arrested for domestic violence against the mother. Regarding that incident, the mother testified, she and the father had agreed to separate and that she would leave with the child. The day she was leaving, the mother said, the father changed his mind and said the mother could not leave. The mother testified that as she tried to go out through the front door, the father “[threw] her up the stairs by [her] hair.”
The father said that that case was placed on the Lincoln municipal court’s administrative docket, and the father enrolled in what appears to be a court-ordered anger-management program. The father testified that he had completed the program at the time of the evidentiary hearing in this case. He also said that he still had to report to the program every other week for the next 18 weeks. He denied that he had been convicted of that charge in the municipal court. On the other hand, the mother testified that the father had been convicted and had been ordered to serve time in jail and to participate in the anger-management program.
The father admitted that he had been convicted on a charge of domestic violence against his own mother when he was 18 years old. The father’s mother testified that the incident had occurred when she told the father to leave the house, he refused, and she shoved him. She was injured in the altercation. She said that the father called the police and that both she and the father were arrested.
Milam testified that the incidents of domestic violence, and a positive test indicating that the father had used marijuana, gave her cause for concern as to whether the father should obtain custody of the child. The father submitted to a number of drug tests while working with DHR and during the course of the litigation. The first test was positive for marijuana; the father requested a second test, the results of which were negative. The results of all other tests taken during the course of the litigation, including one taken at the request of the juvenile court at the conclusion of the hearing, were negative for illegal drugs.
*634 At the time of the trial, the father was 29 years old and was living with his mother. The report on the evaluation DHR conducted on their home indicated that the home was “very clean,” safe, and had sufficient space for the child. The father worked during the day as a roofer; his mother worked at night at Honda. The father said that his mother and his sister would be able look after the child during the day while he worked.
The maternal grandparents had been married for 12 years at the time of the trial. The maternal grandfather, who was 50 years old, had worked for the Shelby County Commission for 20 years. He testified that he and his wife had the financial means to care for the child and added that the father had not contributed to the support of the child during the time the child had been in their custody. However, the record indicates that the father did pay the mother child support pursuant to the divorce judgment during the time the child was in the mother’s custody.
The maternal grandmother, who was approximately 44 years old at the time of the trial, had taken a leave of absence from her job as an ophthalmic technician to care for the child full time. The child had her own room at their house. The DHR evaluation indicated that the maternal grandparents’ home “was more than adequate” for a family and, like the home where the father lived with his mother, was very clean and safe. Milam testified that she had had the opportunity to observe the maternal grandparents with the child. The child and the maternal grandparents had bonded. The maternal grandparents had no reported incidents of domestic violence or use of illegal drugs.
On October 6, 2009, the juvenile court entered an order in which it found that the child was still dependent and that the mother and the father were unable to provide for the needs of the child. The juvenile court also noted that the father “ha[d] admitted to various acts of domestic violence.” Therefore, for the best interest of the child, the juvenile court ruled, custody was awarded to the maternal grandparents. The juvenile court awarded the father standard visitation. The father appeals.
The father contends that the juvenile court erred in finding the child dependent because, he says, such .a finding is not supported by clear and convincing evidence.
“Our standard of review of dependency determinations is well settled.
“ ‘A finding of dependency must be supported by clear and convincing evidence. § 12—15—65(f)[, Ala.Code 1975][3]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court’s ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep’t of Human Res., 716 So.2d 219 (Ala.Civ.App.1998); G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997); and J.M. v. State Dep’t of Human Res., 686 So.2d 1253 (Ala.Civ.App.1996).’
“J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004). This court has stated that clear and convincing evidence is
*635 “ ‘ “[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.”
“ ‘§ 6-11-20 [ (b) ](4), Ala.Code 1975.’
“L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002).”
L.A.C. v. T.S.C., 8 So.3d 322, 326-27 (Ala.Civ.App.2008).
“We are not allowed to substitute our judgment for that of the trial court, even when this court might have reached a different result, unless the trial court’s resolution of the facts is plainly and palpably wrong. L.R.M. v. D.M., 962 So.2d 864, 873-74 (Ala.Civ.App.2007) (citing Griggs v. Griggs, 638 So.2d 916, 918-19 (Ala.Civ.App.1994), quoting in turn Young v. Young, 376 So.2d 737, 739 (Ala.Civ.App.1979)). ‘ “[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.” ’ Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004) (quoting Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003)). When addressing the inability of an appellate court to reweigh the evidence and substitute its judgment for that of the trial court, our supreme court recognized:
“ ‘The trial court must be allowed to be the trial court; otherwise, we (appellate court judges and justices) risk going beyond the familiar surroundings of our appellate jurisdiction and into an area with which we are unfamiliar and for which we are ill-suited — factfinding.’
“Ex parte R.T.S., 771 So.2d 475, 477 (Ala.2000).”
J.B. v. Cleburne County Dep’t of Human Res., 992 So.2d 34, 39-40 (Ala.Civ.App.2008).
Section 12-15-102(8)a., Ala.Code 1975, defines a dependent child as:
“[a] child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
“1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12-15-301 or neglect as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
“2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
“3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
“4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.
“5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
“6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or *636 her responsibilities to and for the child.
“7. Who has been placed for care or adoption in violation of the law.
“8. Who, for any other cause, is in need of the care and protection of the state.”
In determining whether a child is dependent, the juvenile court
“may consider any competent evidence relevant to the ability or willingness of the parent to discharge his or her responsibilities to the child, including, but not limited to, evidence of: domestic violence, see, e.g., A.W.G. v. Jefferson County Dep’t of Human Res., 861 So.2d 400 (Ala.Civ.App.2003), and B.D.S. v. Calhoun County Dep’t of Human Res., 881 So.2d 1042 (Ala.Civ.App.2008); [and] parental conduct toward other children, see, e.g., D.A. v. Calhoun County Dep’t of Human Res., 892 So.2d 963 (Ala.Civ.App.2004)....”
M.E. v. Shelby County Dep’t of Human Res., 972 So.2d 89, 100-01 (Ala.Civ.App.2007).
The procedural posture of this case is unusual, although not unique. The child was initially found dependent while in the mother’s custody. At the time the juvenile court entered its October 6, 2009, judgment in this case, the last party to have legal custody of the child was the mother. In the August 21, 2009, judgment (see supra note 2), the juvenile court again found the child to be dependent and awarded custody of the child to DHR, although the child had been physically placed with the maternal grandparents. In the October 2009 judgment, the trial court found that the child was still dependent and, at that time, awarded custody of the child to the maternal grandparents.
When the mother and the father divorced, the mother was awarded custody of the child subject to the father’s visitation rights. The evidence throughout these proceedings was undisputed that, while in the custody of the mother, the child’s months-old sibling was taken to the hospital, where it was discovered that the sibling, at three months old, had suffered an intracranial hemorrhage and 15 broken bones “highly suggestive of nonaccidental trauma.” Based upon the record before us, we conclude that the evidence supported a finding that, while with her custodial parent — the mother — the child was dependent.
As to the father, the record indicates that he has a steady job. When DHR conducted an evaluation of the home where the father lives with his mother, it found a clean and safe environment suitable for the child. The father testified that, while he is at work during the day, his mother and his sister will care for the child. He said that he generally comes home from work at about 4 p.m., and his mother, who works the night shift at Honda, does not have to be at work until 5 p.m. Therefore, the father said, he does not anticipate having to leave the child in day care.
DHR social worker Milam testified that the father had attended all of his scheduled visits with the child. When Milam has seen the father and the child together, she said, the father is loving and his behavior toward the child is appropriate. She said that the father and the child bonded quickly during their visits. The conditions involving the father that caused Milam concern as far as awarding him custody of the child were his positive test for marijuana use and instances of domestic violence against his former wife and his mother. Evidence indicates that the father had tested positive for marijuana use once but that subsequent tests administered by both DHR during the course of the litigation and at the request of the trial court at the most recent hearing were negative for illegal-drug use.
*637 As to the domestic-violence issue, the father’s conviction for abuse involving his mother occurred 11 years before the hearing in this case. According to his mother’s testimony, she was as much to blame as the father for the altercation that led to the father’s arrest 11 years earlier, and, in fact, both of them were arrested. At the time of the hearing, the father had completed an anger-management program in connection with his arrest for domestic violence against his former wife. The maternal grandfather testified that he had never seen the father act inappropriately or abusively toward the child and that the father “seemed to be a good father” to the child. The mother acknowledged that, during her altercations with the father, the father had never done anything to hurt the child. We note that, after the episode of domestic violence that spurred the mother to call the police and have the father arrested, the mother entered into a settlement agreement of divorce, pursuant to which the father would have standard, unsupervised visitation with the child.
We are mindful that this court cannot reweigh the evidence that was before the juvenile court, and, admittedly, this is a close case. However, the record does not contain clear and convincing evidence that the father is unwilling or unable to provide for the child’s educational needs or is otherwise unable or unwilling to discharge his responsibilities to and for the child. See § 12—15—102(8)(a), Ala.Code 1975. Because the child has a parent who is willing and able to provide for her care, support, health care, and education, the judgment of dependency is improper insofar as it applies to the father.
Ordinarily, because the child has a parent willing and able to care for her, there would be no need for a dispositional phase of the matter; the child would simply return to his or her parent or parents. See J.W. v. T.D., 58 So.Sd 782, 792 (Ala.Civ.App.2010) (“There is no provision in the Alabama Juvenile Justice Act for the disposition of a child if the child is not proven to be dependent, and, in fact, the Act requires the juvenile court to dismiss the petition.”); and § 12-15-310(b), Ala. Code 1975 (“If the juvenile court finds that the allegations in the [dependency] petition have not been proven by clear and convincing evidence, the juvenile court shall dismiss the petition.”). However, pursuant to the parties’ divorce judgment, the mother had primary physical custody of the child at the time the child was found dependent. Thus, a judgment must now be entered divesting the mother of physical custody of the child based upon the finding of dependency and awarding custody to the father.
For the reasons set forth above, to the extent that the judgment of dependency applies to the father, that portion of the judgment is reversed and the cause is remanded to the trial court for entry of a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. DHR also filed a petition seeking custody of the sibling. Because the father is seeking custody of only the child, we will not discuss further proceedings as they relate to the sibling.

. The juvenile court did not enter its written order regarding the April 9, 2009, hearing until August 21, 2009. In the August 21 order, the juvenile court again determined that the child was dependent.

. The requirement that a finding of dependency must be supported by clear and convincing evidence before the dispositional phase of a dependency proceeding is now codified at § 12-15-311(a), Ala.Code 1975.