70 So.3d 1270 (2011)
R.F.W.
v.
CLEBURNE COUNTY DEPARTMENT OF HUMAN RESOURCES.
2091023.
Court of Civil Appeals of Alabama.
April 1, 2011.
*1271 Chad Lee, Wedowee, for appellant.
Sharon E. Ficquette, chief legal counsel, and Kimberly J. Dobbs, staff atty., Department of Human Resources, for appellee.
MOORE, Judge.
R.F.W. ("the father") appeals from a judgment of the Cleburne Juvenile Court ("the juvenile court") declaring M.W. ("the child") dependent and awarding custody of the child to S.J.P., the child's maternal great-grandmother, subject to certain visitation rights of the father and C.D.W. ("the mother"). In that judgment, which was entered on July 14, 2010, the juvenile court set forth the following specific findings of fact:
"That child is dependent in that the child's parents, guardian, or other custodian are unable to discharge their responsibilities to and for the child and the child is in need of the care and protection of the state. The Court specifically *1272 finds that, although the father has attempted to comply with all the requirements of the Department of Human Resources, the father continues to be unable to provide for the child's care, custody and control for any extended period of time. The Court specifically notes that the father has assistance in caring for himself and would need such assistance to continue to adequately care for the child."
The father timely appealed, arguing that clear and convincing evidence does not support the individual factual findings of the juvenile court and its ultimate determination of the dependency of the child.
As a matter of constitutional law, a parent who has exercised custody over a child has a prima facie right to the continued custody of the child. See In re Moore, 470 So.2d 1269, 1270 (Ala.Civ.App.1985). The presumptive right of parents to the custody of their child may be overcome by clear and convincing evidence demonstrating that the parents are currently unable to discharge their responsibilities to and for the child and that the child requires additional care and supervision through the state, i.e., that the child is "dependent." See Ala.Code 1975, § 12-15-102(8)a.6.; see also V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App.2008) (quoting K.B. v. Cleburne County Dep't of Human Res., 897 So.2d 379, 389 (Ala.Civ.App.2004) (Murdock, J., concurring in the result)) ("`[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.'"). "Clear and convincing evidence" is defined as
"`[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.'"
L.M. v. D.D.F., 840 So.2d 171, 179 (Ala. Civ.App.2002) (quoting Ala.Code 1975, § 6-11-20[ (b) ](4)).
On appeal from a judgment finding a child dependent following an ore tenus proceeding, we presume the juvenile court's factual findings are correct. J.W. v. C.H., 963 So.2d 114, 119 (Ala.Civ.App. 2007). Those findings will not be disturbed if they are supported by sufficient evidence. Ex parte Floyd, 550 So.2d 982, 984 (Ala.1989). In passing on the question of the sufficiency of the evidence as to a finding of dependency, this court does not reweigh the evidence; instead, this court determines whether the juvenile court, acting in its fact-finding role, reasonably could have determined from its own weighing of the evidence that the dependency of the child was proven by clear and convincing evidence as that standard is defined above. J.B. v. DeKalb County Dep't of Human Res., 12 So.3d 100, 112 (Ala.Civ. App.2008). Giving due regard to the judgment of the juvenile court, we conclude that the record in this case does not contain sufficient evidence demonstrating that the father is unable to discharge his parental responsibilities to and for the child.
The record shows that, at the time of the trial, the father was living with his mother and his stepfather, while working on a separate house for eventual habitation. The father had been employed in a construction job for approximately 1 year *1273 earning $8.75 per hour, he averaged working 40 to 50 hours per week, and he was earning enough money to provide day care for the child and to cover his living expenses. The father had been exercising unsupervised visitation with the child for over six months. Leslie Driver, a social worker with the Cleburne County Department of Human Resources ("DHR") who was assigned to the case, testified that she had no concerns with regard to those visits. Driver testified that the child's room at the father's house is adequate and appropriate, that the home meets minimal standards, and that it is sanitary. The child interacts well with the father, who testified that the child cries to come home with him at the end of visits. Driver testified that she had not observed any problems between the father and the child, and she indicated that she did not perceive any safety issues relating to the child. The record contains no evidence indicating that the persons residing in the home would provide anything but proper care for the child.
The juvenile court nevertheless found that the father could not meet his parental obligations to the child on the basis of the father's failure to meet DHR's goals and his reliance on others for assistance with caring for the child. As to the first reason, the evidence shows that, in this case, DHR did not establish any requirements for the father to meet in order to regain custody of the child. In a prior case, DHR had requested that the father complete a parenting class and anger-management counseling. The father completed the parenting class, but not the anger-management counseling. However, Driver testified that the only anger the father had exhibited related to the mother, who had intentionally interfered with his visitation rights. The mother had since lost custody and was in jail at the time of the dependency trial. The father testified that he had "let go" of his anger regarding the mother. In this case, DHR did not identify that former problem as a barrier to reuniting the father and the child, and, as stated above, Driver testified that she did not perceive any safety issues regarding the child while in the care of the father. Given those circumstances, the failure of the father to complete anger-management counseling does not render him unable to properly parent the child.
As to the other reason given by the juvenile courtthe father's reliance on others for assistance with caring for the childthe evidence shows that the father completed only the eighth grade and that he cannot read and write well. As a result, the father depends on his mother to write checks for him "and stuff like that." Other than that one responsibility, the record contains no evidence indicating that the father does not properly take care of his own needs. The evidence appears undisputed that the father's mother, stepfather, and girlfriend all assist the father with caring for the child. Driver specifically testified that the father told her that his mother helps "a lot" by "cooking, bathing [the child], that sort of thing." The juvenile court apparently believed that any dependence on his family rendered the father incompetent to parent the child. However, "in the abstract, a parent's reliance on others, particularly family, for support is not, in and of itself, determinative of the parent's unfitness." Ex parte A.M.B., 4 So.3d 472, 478 (Ala.2008).
We recognize that mental limitations, when severe enough, may be sufficient to render a parent unable to discharge parental responsibilities to and for a child. In this case, however, the father evidently *1274 displayed sufficient mental skills to pass the parenting class and to adequately care for the child in both a supervised and an unsupervised setting. No expert or other testimony indicated that the father's intellectual limitations are so profound as to prevent him from continuing to provide such adequate care. See C.S.B. v. State Dep't of Human Res., 26 So.3d 426, 432 (Ala.Civ.App.2009) (affirming a judgment finding that a child was not dependent because "no doctor who has evaluated the mother was allowed to testify about or submit reports regarding those evaluations, there is no evidence as to the extent of the mother's limited mental capacity, whether the mother's mental limitations prevent her from being able to fulfill her parental responsibilities to the child, and whether the mother's condition is likely to change").
In its brief to this court, DHR relies on two pieces of evidence to support its position that the father lacks the mental capability to properly care for the child. First, DHR proved that the father had at one time allowed the child to play with an inoperable cigarette lighter. The father testified that the child liked to dig objects out of his pocket and play with them. The father stated that the child had developed a particular fondness for the cigarette lighter, which did not contain any fluid and which the child could differentiate from other cigarette lighters. DHR social workers advised the father that he should not allow the child to play with the lighter; at trial, the father indicated his agreement with that instruction. The record contains no evidence indicating that the child was harmed or was ever in any danger of harm from playing with the lighter.
Second, the record shows that the father had accused the mother of taking the child to the doctor too much, that he had argued with the mother over the medications the child took, and that, on a certain visitation exchange, the father had informed the mother that he would not give the child certain medication as the mother had instructed him to do. After overhearing that remark, Driver testified that she had told the father he should follow the prescriptions given by the child's doctors. The father testified that he had done everything DHR had asked him to do. No witness testified that the father had actually ever failed to give the child medication as prescribed or that he had failed in any other manner to properly meet the medical needs of the child. Driver testified that the father understands the necessity of taking the child to the doctor and that he had expressed a willingness to continue to do that. Driver also testified that the father was capable of administering the child's medication as prescribed, although she could not answer the question whether he would.
The foregoing evidence does not substantiate any contention that the father is so mentally challenged that he cannot adequately care for the child. At worst, allowing the child to play with a nonworking cigarette lighter exhibited poor judgment on the part of the father, not abuse or neglect. Disagreeing with the mother on the proper course of medical treatment for the child also does not amount to neglect absent evidence that the father had ever endangered the child by actually withholding prescribed medication. See In re Hickman, 489 So.2d 601, 602 (Ala.Civ.App. 1986) (holding that the limited mental capabilities of a parent, in the absence of evidence of abuse or neglect, does not prove an inability to properly parent a child).
We conclude that the record does not contain clear and convincing evidence indicating *1275 that the child is dependent. We therefore reverse the juvenile court's judgment, and we remand the cause with instructions to the juvenile court to enter a judgment awarding temporary custody of the child to the father and dismissing the dependency petition.[1]See J.L. v. W.E., 64 So.3d 631 (Ala.Civ.App.2010).[2]
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMAS, J., concurs.
BRYAN, J., concurs in the result, without writing.
THOMPSON, P.J., dissents, with writing, which PITTMAN, J., joins.
THOMPSON, Presiding Judge, dissenting.
After reviewing the record in this case, I believe that the juvenile court's judgment, based upon ore tenus evidence, is due to be affirmed. Our standard of review is well settled:
"`We are not allowed to substitute our judgment for that of the trial court, even when this court might have reached a different result, unless the trial court's resolution of the facts is plainly and palpably wrong. L.R.M. v. D.M., 962 So.2d 864, 873-74 (Ala.Civ.App.2007) (citing Griggs v. Griggs, 638 So.2d 916, 918-19 (Ala. Civ.App.1994), quoting in turn Young v. Young, 376 So.2d 737, 739 (Ala.Civ. App.1979)). "`[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.'" Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004) (quoting Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003)). When addressing the inability of an appellate court to reweigh the evidence and substitute its judgment for that of the trial court, our supreme court recognized:
"`"The trial court must be allowed to be the trial court; otherwise, we (appellate court judges and justices) risk going beyond the familiar surroundings of our appellate jurisdiction and into an area with which we are unfamiliar and for which we are ill-suitedfactfinding."
"`Ex parte R.T.S., 771 So.2d 475, 477 (Ala.2000).'
"J.B. v. Cleburne County Dep't of Human Res., 992 So.2d 34, 39-40 (Ala.Civ. App.2008)."
J.L. v. W.E., 64 So.3d 631, 635 (Ala.Civ. App.2010). Furthermore, when a juvenile court receives ore tenus evidence and observes the witnesses' demeanors, "this court cannot reverse the juvenile court's judgment unless it is unsupported by the evidence so as to be clearly and palpably wrong." J.W. v. C.H., 963 So.2d 114, 120 (Ala.Civ.App.2007).
In support of his assertion that clear and convincing evidence does not support *1276 the juvenile court's finding that the child is dependent, the father compares the facts in this case with those of J.L. v. W.E., supra. In J.L., as in this case, the child was in the mother's custody pursuant to a divorce judgment at the time the Talladega County Department of Human Resources ("the Talladega County DHR") removed the child from the home. The removal was brought about because of the mother's deleterious conduct. When the father learned that the mother no longer had custody of the child, he petitioned for custody. The child's maternal grandparents also sought custody of the child. Id. at 632-33.
In J.L., the father had been involved in two incidents of domestic violence, one of which had occurred when he was 18 years old, more than 10 years before the events made the basis of that case. As directed by the Talladega County DHR, the father completed an anger-management course. The father also had tested positive for the use of marijuana on one occasion, but the results of all subsequent drug tests during the course of the litigationincluding a test ordered on the day of the hearing were negative for the use of drugs. The father held a steady job, lived with his mother in a house that the Talladega County DHR had found was suitable for the child, and had always exhibited appropriate behavior when visiting with the child. Id. at 636. This court found that the juvenile court's judgment finding the child dependent and awarding custody to the maternal grandparents was not supported by clear and convincing evidence. Id. at 637. Specifically, we held that there was no evidence indicating that the father was unable or unwilling to care for the child; thus, the finding of dependency was improper. Id. at 637.
Although many of the facts in J.L. are similar to those in this case, the two cases are distinguishable in important ways. Although the father in J.L. had successfully completed an anger-management course, the evidence in this case indicated that the father's counselor, who was attempting to teach coping skills to the father, had ended their sessions because the father was not making progress. The father had difficulty understanding the guidance workers for the Cleburne County Department of Human Resources ("the Cleburne County DHR") had attempted to provide to him. The father admitted that his mother had to help him write checks and "stuff like that." Evidence also indicated that the father had made inappropriate choices concerning the child, such as allowing the child to play with a cigarette lighter and failing to give the child medicine prescribed by the pediatrician because the father did not believe the child needed it. The father in this case also had limited experience in spending time alone with the child, who was three or four years old at the time of the dependency hearing. No such evidence was presented in J.L. In this case, the Cleburne County DHR recommended that the child remain with the child's maternal great-grandmother. The juvenile court, which had the opportunity to observe the father during the hearing, explicitly found that "the father has assistance in caring for himself and would need such assistance to continue to adequately care for the child."
Admittedly, this is a close case, and I may have reached a different conclusion than the juvenile court. However, the juvenile court had the opportunity to observe the parties as they testified, and it was in a better position than this court to make the determination whether the father was capable of fulfilling his responsibilities to the child. Although evidence indicated that the father appeared to be making progress *1277 toward being able to care for the child and although there is no evidence indicating that the father would intentionally harm the child, as previously mentioned, there was also evidence indicating that the father had made decisions that were detrimental to the best interests of the child. Based on the ore tenus standard of review requiring that we give deference to the juvenile court's findings of fact, see J.L., 64 So.3d at 637, I cannot say that the evidence does not support the conclusion that the father was unable to care for the child at the time of the hearing or that the juvenile court's judgment is clearly erroneous. Because I would affirm the judgment of the juvenile court, I must respectfully dissent.
PITTMAN, J., concurs.
NOTES
[1] Because we are reversing the juvenile court's judgment on the foregoing grounds, we do not address the other issues raised by the father.
[2] Because the child is not dependent, the juvenile court has jurisdiction only to transfer custody of the child to the father on a temporary basis for the protection of the child. See Ala.Code 1975, § 12-15-138. Any further custodial disposition, including awarding visitation rights to the mother, would have to be determined by the appropriate circuit court. See R.T. v. B.N.H., 66 So.3d 807 (Ala.Civ.App. 2011).