THOMAS, Judge.
E.D., Jr. ("the father"), and J.M. ("the mother") are the parents of a son, S.G.D. ("the child"). The Lee County Department of Human Resources ("DHR") commenced in the Lee Juvenile Court ("the juvenile court") a dependency proceeding that was assigned case no. JU-17-373.01 ("the dependency action"). The father appeals the judgment entered in the dependency action determining that the child is dependent as to the father and awarding the child's custody to the mother.
The record on appeal reveals the following. The mother and the father are the unmarried parents of the child, who was born in 2011. At some point the parents' romantic relationship changed, and the record in this appeal indicates that the mother initiated a paternity and child-support action and the father initiated a paternity action in the Lee Circuit Court "Child Support Division." Apparently those actions were consolidated and assigned case no. CS-13-900004 ("the child-support action").[1] The record in this appeal does not contain orders entered in the child-support action; however, it contains a copy of the parties' settlement agreement in which they stipulated to the father's paternity of the child and requested an order awarding them joint custody of the child. It is undisputed that the parties shared joint custody of the child.
In July 2017, DHR received a report that the father had poured hot water on the child to punish him, and, during DHR's investigation, the child disclosed to DHR that the father had touched the child's penis and had made him feel uncomfortable. DHR had also learned that the father was "indicated" for physical abuse and bizarre discipline of his four older children from another relationship.[2]
*742 On August 1, 2017, the mother filed a complaint seeking a modification of the custody judgment entered in the child-support action.[3] On August 14, 2017, DHR initiated the dependency action, alleging that the child was dependent as to the father.[4] On August 29, 2017, the mother filed in the juvenile court a complaint seeking the entry of a protection-from-abuse ("PFA") order against the father on behalf of herself and the child, which was assigned case no. CV-17-163 ("the PFA action"). The record contains an order entered in the PFA action, awarding the mother temporary custody of the child and providing that the child could not visit the father. See § 12-15-138, Ala. Code 1975 ("The juvenile court, at any time after a dependency petition has been filed, or on an emergency basis, may enter an order of protection or restraint to protect the health or safety of a child subject to the proceeding."). After a hearing in the dependency action, the juvenile court entered a judgment adjudicating the child dependent as to the father and awarding sole legal and physical custody of the child to the mother.
We first consider whether the juvenile court properly exercised subject-matter jurisdiction over the dependency action. "We review the legal question of subject-matter jurisdiction de novo." T.K. v. M.G., 82 So.3d 1, 3 (Ala. Civ. App. 2011) (citing Hill v. Hill, 89 So.3d 116, 117-18 (Ala. Civ. App. 2010) ). Section 12-15-114(a), Ala. Code 1975, provides, in pertinent part:
"(a) A juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged to have committed a delinquent act, to be dependent, or to be in need of supervision. A dependency action shall not include a custody dispute between parents."
The pleading that initiated the dependency action was not filed by the mother or the father as a custody dispute; rather, it was filed by DHR, alleging that the child is dependent as to the father. "Once the dependency jurisdiction of a juvenile court has been properly invoked, the juvenile court has an imperative statutory duty to conduct an evidentiary hearing to determine the dependency of the child." K.C.G. v. S.J.R., 46 So.3d 499, 501 (Ala. Civ. App. 2010). The juvenile court properly exercised its dependency jurisdiction. Furthermore, § 12-15-138 provides that a juvenile court has the authority to protect the health and safety of a child in emergency circumstances, such as those alleged by DHR in this case.
Next, we consider whether the child is a dependent child. DHR asked the juvenile court to resolve a question upon which neither this court nor our supreme court has offered guidance until today:
*743 whether a child can be a dependent child if the child has a fit custodial parent.[5]
"Our standard of review of dependency determinations is well settled.
" 'A finding of dependency must be supported by clear and convincing evidence. § 12-15-65(f)[, Ala. Code 1975]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala. Civ. App. 1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court's ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep't of Human Res., 716 So.2d 219 (Ala. Civ. App. 1998) ; G.C. v. G.D., 712 So.2d 1091 (Ala. Civ. App. 1997) ; and J.M. v. State Dep't of Human Res., 686 So.2d 1253 (Ala. Civ. App. 1996).'
" J.S.M. v. P.J., 902 So.2d 89, 95 (Ala. Civ. App. 2004). This court has stated that clear and convincing evidence is
" ' "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
" '§ 6-11-20[ (b) ](4), Ala. Code 1975.'
" L.M. v. D.D.F., 840 So.2d 171, 179 (Ala. Civ. App. 2002)."
L.A.C. v. T.S.C., 8 So.3d 322, 326-27 (Ala. Civ. App. 2008).
A "dependent child" is defined in § 12-15-102(8)a. as "[a] child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
"1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12-15-301[Ala. Code 1975,] or neglect as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
"2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
"3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
"4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.
"5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
"6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.
*744 "7. Who has been placed for care or adoption in violation of the law.
"8. Who, for any other cause, is in need of the care and protection of the state."
In Ex parte L.E.O., 61 So.3d 1042 (Ala. 2010), L.E.O. and P.O. initiated an action by filing a petition in the Madison Juvenile Court alleging that J.I.P., Jr., a child in their care, was dependent and seeking an award of custody. 61 So.3d at 1043. The Madison Juvenile Court concluded that J.I.P., Jr., was not a dependent child. Id. A majority of our supreme court determined that, because he had been abandoned by everyone legally required to care for him, J.I.P., Jr., was a dependent child even though his father was a noncustodial parent desiring to assume his custody. Id. at 1050. Our supreme court explained:
"It is a reasonable interpretation of [former] § 12-15-1(10)[, Ala. Code 1975, the predecessor to § 12-15-102(8)(a).,] to require that, in determining whether a child is 'in need of care or supervision,' the juvenile court must consider whether the child is receiving adequate care and supervision from those persons legally obligated to care for and/or to supervise the child. The child is entitled to the care or supervision from those persons with the authority to take appropriate actions on behalf of the child, such as, for example, to enroll the child in school, to authorize medical care for the child, and to obtain insurance for the benefit of the child. This interpretation comports with the purposes of the [new] Alabama Juvenile Justice Act, ... § 12-15-101 et seq., Ala. Code 1975, among which are to provide children with permanency and to foster family preservation."
61 So.3d at 1047. In G.H. v. Cleburne County Department of Human Resources, 62 So.3d 540, 544 (Ala. Civ. App. 2010), this court, on the authority of Ex parte L.E.O., reiterated that, even if a child has a fit noncustodial parent willing to assume custody, the child can be dependent if the child is dependent as to the custodial parent. See also G.H., 62 So.3d at 551 (Moore, J., concurring in the result).
In this case, the parents exercised joint custody of the child. In other words, both parents were custodial parents. DHR alleged and offered testimony intended to demonstrate that the child was dependent as to the father, but it did not allege or offer testimony intended to demonstrate that the child was dependent as to the mother. In fact, DHR's witnesses testified that the child was well taken care of by the mother, and the record demonstrates that she had acted to protect the child's health and safety by seeking a PFA order in the PFA action and a custody modification in the child-support action. Because the child in this case has a fit and willing custodial parent, he is not similarly situated to the child in Ex parte L.E.O. or to the children in G.H. There is no evidence demonstrating that the child's care or supervision is inadequate. The mother, a person legally obligated to care for and to supervise the child, has the authority to take appropriate actions on behalf of the child, and she has done so.
We have also examined whether our decision in this case would conflict with our previous decisions in J.L. v. W.E., 64 So.3d 631 (Ala. Civ. App. 2010) ; M.P.G. v. Jefferson County Department of Human Resources, 215 So.3d 1096 (Ala. Civ. App. 2016) ; and T.W. v. Madison County Department of Human Resources, 946 So.2d 469 (Ala. Civ. App. 2006). In J.L., R.L., the mother, had been the custodial parent of her child, L.L., pursuant to a divorce judgment. 64 So.3d at 632. Later, L.L. was removed from R.L.'s custody and placed in foster care based upon a suspicion that *745 R.L. had abused L.L.'s sibling. Id. J.L., L.L.'s father, and L.L.'s maternal grandparents sought custody of L.L. in the Talladega Juvenile Court, which adjudicated L.L. dependent, awarded her custody to DHR, and placed her with her maternal grandparents. Id. at 632-33. J.L. filed a notice of appeal arguing that L.L. was not dependent. Id. at 634. We determined that the evidence presented had not demonstrated that J.L. was unable or unwilling to parent L.L. and concluded that there had been no need to conduct the dispositional phase of a dependency proceeding. Id. at 637. However, we did not order the Talladega Juvenile Court to dismiss the action because J.L. was not a custodial parent. Instead, we remanded the action, noting that a judgment must be entered divesting the custodial parent of custody based upon the finding of dependency and awarding custody to the noncustodial parent. Id.
In M.P.G., we relied upon T.W., and reiterated that a juvenile court cannot dismiss a dependency action without holding an evidentiary hearing to afford a parent who had been the custodial parent an opportunity to introduce evidence indicating that a child should be returned to his or her custody. M.P.G., 215 So.3d at 1101. We observed that to hold otherwise would have allowed transfers of permanent custody of children without evidentiary hearings to consider the best interests of such children.
"In T.W., the Madison County Department of Human Resources had filed a dependency petition concerning F.H., alleging that F.H. was dependent because she and one of her half siblings, whose custody was not at issue in T.W., had been found to have unexplained injuries and previous injuries that had healed. 946 So.2d at 470. The petition further alleged that F.H. had told a social worker that B.F., the boyfriend of T.W., F.H.'s mother, had caused the injuries; that T.W. had been unable or unwilling to offer a plausible explanation for F.H.'s injuries; and that T.W. was unable or unwilling to protect F.H. from further physical abuse. Id. The Madison Juvenile Court held a shelter-care hearing and placed F.H. in the custody of K.H., F.H.'s father. 946 So.2d at 470-72. Thereafter, the Madison Juvenile Court entered an order setting a hearing regarding ' "temporary legal custody." ' 946 So.2d at 472. The mother then filed a motion for an evidentiary hearing regarding custody of F.H. Id. In response to that motion, the Madison Juvenile Court set the action for an evidentiary hearing, id.; however, a week before the scheduled evidentiary hearing, the Madison County Department of Human Resources filed a motion to dismiss the dependency action involving F.H., 946 So.2d at 473. In support of its motion, the Madison County Department of Human Resources alleged that F.H. was doing well in K.H.'s care and that it no longer considered F.H. to be dependent. Id. The following day the Madison Juvenile Court entered a judgment granting the Madison County Department of Human Resources' motion to dismiss. Id. T.W. filed a postjudgment motion asking the Madison Juvenile Court to vacate its judgment granting the motion to dismiss and to set the action for an evidentiary hearing so that she would have an opportunity to introduce evidence indicating that she was the fit and proper person to have custody of F.H. Id. That motion was denied; T.W. then appealed to this court. Id.
"This court concluded that the Madison Juvenile Court had erred in dismissing the dependency action without affording T.W. an opportunity to introduce *746 evidence indicating that F.H. should be returned to T.W.'s custody, stating:
" '[T]he [Madison Juvenile Court's] dismissal of this action effectuated a transfer of permanent custody of the child to [K.H.] without holding an evidentiary hearing to consider the best interests of the child. See D.K.G. v. J.H., 627 So.2d 937 (Ala. Civ. App. 1993) (the appropriate standard to be applied in the dispositional phase of a dependency proceeding is the "best-interests-of-the-child standard"). In addition, this court recently noted that the final dispositional order in a dependency action " 'coincide[s] with the end of the child's dependency ....' "; such an order, " 'results in a custody award wherein the parent or custodian is able and willing to have the care, custody, and control of the child, free from any intervention or supervision by the state under the dependency statutes.' " In re B.B., 944 So.2d 960, 962 (Ala. Civ. App. 2006) (quoting S.P. v. E.T., 957 So.2d 1127, 1131 (Ala. Civ. App. 2005) ).
" 'Based on the facts of this case, the [Madison Juvenile Court] should have held a full evidentiary dispositional hearing to determine whether the child should have been returned to [T.W.'s] physical custody. Accordingly, the [Madison Juvenile Court's] judgment dismissing the dependency action is reversed, and the cause is remanded for the [Madison Juvenile Court] to hold an evidentiary hearing so as to afford [T.W.] an opportunity to present evidence regarding whether [F.H.] should be returned to her.'
" 946 So.2d at 473-74."
M.P.G., 215 So.3d at 1100-01 (reversing judgment in which juvenile court disposed of dependency action without having conducted a hearing at which mother could present evidence demonstrating that she was a fit custodian and remanding the action for further proceedings). In this case, the juvenile court held a dependency hearing in which the father participated, and the father was a custodial parent, not a noncustodial parent. Therefore, our decision in this case is not in conflict with our decisions of the appeals in J.L., supra, M.P.G., supra, or T.W., supra.[6]
In this case, the juvenile court had subject-matter jurisdiction over the action; however, because the child has a custodial parent able to properly care for and supervise him, the child is not a dependent child. This opinion should not be read as holding that a child with joint custodians, only one of whom has been allegedly harming the child, can never be declared dependent. If an otherwise fit joint custodian fails to adequately protect a child from the harm of another joint custodian, the child may be adjudicated dependent and subjected to state protective services under Ex parte L.E.O., supra. The juvenile court's judgment is reversed, and the cause is remanded for the juvenile court to enter an order dismissing the dependency action. See § 12-15-310(b). Presumably, the custody dispute between the parents will continue in the child-support action, and, to ensure the safety of the child, the "flexible and *747 speedy remedy" of a PFA order is available to the mother in that action. § 30-5-1(b)(2), Ala. Code 1975; see also § 30-5-3(b), Ala. Code 1975. We pretermit discussion of the father's other arguments. See Favorite Mkt. Store v. Waldrop, 924 So.2d 719, 723 (Ala. Civ. App. 2005).
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman J., concur.
Moore, J., concurs specially.
Donaldson, J., concurs in the result, without writing.
MOORE, Judge, concurring specially.
In this case, J.M. ("the mother") and E.D., Jr. ("the father"), had been sharing joint custody of S.G.D. ("the child") since 2013. In the summer of 2017, the child began exhibiting signs of trauma, which led the mother to suspect that the father had been abusing the child while the child was in the father's home during the father's custodial periods. The mother thereafter withheld the child from returning to the custody of the father. The mother promptly reported her concerns to the Lee County Department of Human Resources ("DHR"), which, for the protection of the child, advised the mother to obtain a forensic interview with a local child-advocacy center, to enroll the child in counseling, to file a protection-from-abuse action against the father, and to file a petition to modify custody of the child so that the mother could obtain sole legal and physical custody of the child. The mother followed the advice of DHR on all points and obtained a court order prohibiting the father from contacting or exercising custody of the child.
DHR nevertheless filed a dependency petition in the Lee Juvenile Court ("the juvenile court"). At the trial on that petition, DHR's representative testified that DHR had no concerns with the mother and that the mother had done all that she could legally and otherwise do to protect the child from any harm from the father. The juvenile court determined that the father had not actually abused the child, but it found the child dependent because the father had previously abused his other children and because the father had recently pleaded guilty to child endangerment. The juvenile court awarded the mother sole legal and physical custody of the child subject to supervised visitation by the father.
On appeal, the father argues that the juvenile court lacked subject-matter jurisdiction to modify custody of the child because, he says, the child had a custodial parent, i.e., the mother, who was at all relevant times adequately discharging her parental responsibilities toward the child. In Ex parte L.E.O., 61 So.3d 1042, 1047 (Ala. 2010), our supreme court held that "in determining whether a child is 'in need of care or supervision,' [so as to be dependent under Ala. Code 1975, former § 12-5-1(10), the predecessor to § 12-15-102(8)a., Ala. Code 1975,] the juvenile court must consider whether the child is receiving adequate care and supervision from those persons legally obligated to care for and/or to supervise the child." By that standard, a child may be found to be dependent, i.e., in need of the supervision and protection of the state, only when all persons with a duty of care and supervision toward the child are not providing adequate care and supervision. Accordingly, in a case in which a child is subject to a judgment awarding both his or her physical custody and legal custody to joint custodians, that child may be considered dependent only when all joint custodians are failing in their responsibilities to and for the child.
*748 In this case, the undisputed evidence shows that the mother discharged all of her parental responsibilities of adequately caring for and supervising the child. Indeed, the juvenile court obviously transferred sole legal and physical custody of the child to the mother based on its finding that she was properly performing her custodial role. Because the mother was adequately caring for and supervising the child, and because the mother had taken all legal steps necessary to secure the child from the allegedly abusive father, the child was not in need of the protection and supervision of the state either at the time DHR filed its dependency petition or at the time of the trial and the adjudication of the dependency of the child. In light of these particular circumstances, I agree that the juvenile court erred in finding the child dependent and that, based on our past precedent, the juvenile court's judgment is void for lack of subject-matter jurisdiction.
I agree that the main opinion
"should not be read as holding that a child with joint custodians, only one of whom has been allegedly harming the child, can never be declared dependent. If an otherwise fit joint custodian fails to adequately protect a child from the harm of another joint custodian, the child may be adjudicated dependent and subjected to state protective services under Ex parte L.E.O."
266 So.3d at 746. The record in this case indicates that the mother took all the formal and informal actions that were necessary to adequately protect the child, but, if she had not, the juvenile court would have been correct in intervening through its dependency jurisdiction to assure the protection of the child.

"Circuit courts in Alabama have concurrent jurisdiction with juvenile courts to adjudicate paternity." Ex parte C.P., 253 So.3d 401, 402 n.1 (Ala. Civ. App. 2017) (citing Brock v. Herd, 187 So.3d 1161, 1163-64 (Ala. Civ. App. 2015), citing, in turn, among other authorities, § 26-17-104, Ala. Code 1975 ).

"After an investigator's assessment of the reported child abuse or neglect, DHR typically designates either an 'indicated' or 'not indicated' disposition for the report. An 'indicated' disposition is defined as '[w]hen credible evidence and professional judgment substantiates that an alleged perpetrator is responsible for child abuse or neglect.' § 26-14-8(a)(1), Ala. Code 1975." Duran v. Buckner, 157 So.3d 956, 962 (Ala. Civ. App. 2014) (footnote omitted).

Although that complaint is not contained in the record on appeal, the mother testified that she had filed her complaint seeking a modification of custody on August 1, 2017, and Deputy Steve Miller testified at the November 7, 2017, dependency hearing that he had, that morning, perfected service of the summons and complaint on the father, who had been transported from the Russell County jail to the dependency hearing.

"[T]he juvenile court may assume jurisdiction to adjudicate custody when DHR brings a separate action alleging dependency and requesting that custody be removed from the custodial parent due to neglect and inability to care for the child. Carter v. Jefferson County Department of Pensions & Security, 496 So.2d 66 (Ala. Civ. App. 1986). In such circumstances, the central issue is the child's immediate welfare rather than a mere determination of custody between two fit parents. Id."
Ex parte K.S.G., 645 So.2d 297, 300 (Ala. Civ. App. 1992).

But see Ex parte W.E., 64 So.3d 637, 638 (Ala. 2010) (Murdock, J., concurring specially) ("[D]ependency is a status created by law that either is true of a child or is not. That is, either a child is dependent or it is not. A child cannot be dependent vis-à-vis one parent but not dependent as to the other parent. If the child is not dependent 'as to one parent,' then the child is not dependent.")

Furthermore, our decision in this case has no application to termination-of-parental-rights actions wherein a custodial parent seeks to terminate the parental rights of the other parent because, in those situations, a finding of dependency is not required. See T.M. v. M.D.B., 160 So.3d 1, 7-8 (Ala. Civ. App. 2014) (quoting Ex parte Beasley, 564 So.2d 950, 954 (Ala. 1990) ). Moreover, nothing in this opinion should be read as a limitation on a juvenile court's authority to issue emergency custody orders, without first adjudicating dependency. See § 12-15-138, Ala. Code 1975; Ex parte T.M., 218 So.3d 850, 852 (Ala. Civ. App. 2016).